### HREGLICH et al. v. ONE THOUSAND TONS OF COAL.

(District Court, S. D. New York. February 11, 1904.)

1. SHIPPING—CHARTER PARTY—CARRYING CAPACITY OF VESSEL.
    Evidence *held* insufficient to sustain the claim of a charterer that the vessel did not have the carrying capacity guarantied by the charter.

In Admiralty. Suit to recover charter money.

Ullo & Ruebsamon, for libellants.
Roger Foster, for claimant.

ADAMS, District Judge. This action was brought by Augusto Hreglich, as master of the steamship Marianne, and Alberto Cosulich and Calisto Cosulich, trading under the firm name of Fratelli Cosulich, as managing owners of the same, to recover a balance of charter money, said to amount to $1,500, alleged to be due under a charter of the steamship to the William W. Brauer Steamship Company, dated the 8th day of October, 1902.

The charter covered a voyage from Hamburg to New York, with general cargo, for the carriage of which the ship was to receive a lump sum of £2,430. The cargo consisted partly of 2,000 tons of coal and upon default in this payment of full charter money, 1,000 tons thereof were seized, after delivery to the respondent, under process issued upon the libel.

The Brauer Company appeared to defend the coal, alleging that a cargo capacity of 5,400 tons, guarantied by the charter, was incorrect and that the steamship never had such capacity, and particularly did not on this occasion, because an excessive amount of coal was carried by the steamship above her requirements for her own use on the voyage. The answer also alleges that the cargo carrying deficiency was not discovered by the claimant until after the steamship was loaded, and it claimed a right to offset the damage it sustained, amounting to $2,000, against the libellants' balance.

The evidence on the part of the libellants shows that the steamship had previously carried cargoes of greater weight than was guarantied by this charter party, in addition to several hundred tons of coal for the steamship's use. On this occasion, she had a full cargo of general merchandise, besides about 700 tons of coal for her own use, when she started on her voyage. Some of this coal she carried in her bunkers and some in the alley ways and on deck. A part of the cargo was light and bulky. The libellants' evidence tends to show that the vessel

actually had the guaranteed capacity, exclusive of the coal carried for her own use.

The only testimony offered to support the defense is the opinion of one of the Brauers, reached by figuring up the capacity of the vessel from a plan, which showed a total dead weight cargo capacity of 5,700 tons. He said that after making necessary deductions, her carrying capacity was not more than about 4,800 tons. I do not consider, however, that the estimate of the witness, based upon a plan of the vessel, is sufficient to overcome the testimony of the libellants' witnesses with respect to the vessel's cargo capacity, which was the result of actual experience.

Decree for the libellants, to be settled upon one day's notice.